33 F.3d 51
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Dolores J. KING, Plaintiff-Appellant,
v.
VIRGINIA EMPLOYMENT COMMISSION; Rebecca Sperlazza; Joseph
E. Smith, Defendants-Appellees.
 No. 93-1619.
 United States Court of Appeals, Fourth Circuit.
 Argued May 12, 1994.
Decided August 10, 1994.
 
 1
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, District Judge. (CA-92-688-R)
 
 
 2
 Argued: Jo Ann P. Myles, Greenbelt, MD. On brief: Elisa Dale Sinrod, Alexandria, VA, for appellant.
 
 
 3
 Neil Anthony Gordon McPhie, Sr. Asst. Atty. Gen., Office of the Attorney General, Richmond, VA. On brief: James S. Gilmore, III, Atty. Gen., Office of the Attorney General, Richmond, VA, for appellees.
 
 
 4
 E.D.Va.
 
 
 5
 AFFIRMED.
 
 
 6
 Before ERVIN, Chief Judge, SPROUSE, Senior Circuit Judge, and DUPREE, Senior United States District Judge for the Eastern District of North Carolina, sitting by designation.
 
 OPINION
 PER CURIAM
 
 7
 Appellant, Dolores J. King, filed a complaint in this action against her employer, the Virginia Employment Commission (VEC), her immediate supervisor, Joseph E. Smith, and her regional director, Rebecca Sperlazza, alleging violations of Title VII of the Civil Rights Act, 42 U.S.C. Sec. 2000e, et seq., and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 621, et seq. Also alleged are several state law claims. King alleged that defendants maintained a pattern and practice of discriminating against blacks, females and persons over age forty in hiring, placement, promotion and salary and that she was denied promotions on five separate occasions as a result of these policies. King also alleged that defendants retaliated against her for filing complaints of discrimination. She now appeals the summary judgment dismissal of her federal causes of action by the district court. For the reasons discussed below we affirm.
 
 I.
 
 8
 Appellee VEC is a state agency authorized to administer the Virginia Unemployment Compensation Act and it is divided into three divisions, one of which is the Unemployment Insurance Services (UIS) Division. Appellee Sperlazza is the regional director for the Northern Virginia region of UIS. Appellee Smith is the office manager of the UIS field office located in Fairfax, Virginia.
 
 
 9
 Appellant King, an African-American female born June 21, 1941, began employment with the VEC in September 1988 as a temporary employee. On January 1, 1989, King was hired full-time as an interviewer at the UIS field office in Alexandria, Virginia, under the supervision of Robert Grisar. On March 12, 1990, King was transferred to the UIS field office in Falls Church, which subsequently was moved to Fairfax, Virginia, where she came under the supervision of appellee Smith.
 
 
 10
 Between September 1990 and April 1991, King applied for five separate positions with the VEC as a hearing officer, a professional position in which the officer conducts administrative hearings to make initial determinations of eligibility for unemployment insurance. In the initial step in hiring a hearing officer at the VEC a three-person panel interviews all candidates and selects approximately three individuals for a second interview with the hiring official. After conducting the second interview, reviewing the panel's evaluations and discussing it with his or her supervisor, the hiring official makes the final determination of whether to hire a particular individual. Although King received second interviews on all but one occasion and was rated highly by most panelists and hiring officials, she was not promoted to any of the five positions for which she applied. The reasons usually offered for not promoting King were that the candidate selected had more experience and that King lacked interpersonal and communication skills.
 
 
 11
 In July 1991, within a month after she was denied the fifth position as a hearing officer, King filed charges against defendants in both the Equal Employment Opportunity Commission (EEOC) and the Virginia Department of Personnel and Training (VDPT) for discrimination based on her age, race and gender. She subsequently amended her charges to assert that defendants had retaliated against her for filing charges of discrimination. The EEOC and VDPT issued "no cause" determinations on plaintiff's charges, and the EEOC issued a right to sue letter on May 4, 1992. Plaintiff timely filed her complaint in this action, and the district court thereafter granted defendants' motion for summary judgment and entered an order dismissing the action on April 21, 1993.
 
 
 12
 The court reviews the grant of summary judgment de novo, applying the same standard as the trial court and drawing all reasonable inferences in favor of the non-moving party. Helm v. Western Maryland Railway Company, 838 F.2d 729, 734 (4th Cir.1988).
 
 II.
 
 13
 Plaintiff King's first cause of action alleges that the VEC had a pattern or practice of discriminating against blacks, females and persons over age forty in hiring and promotion decisions. To prove a claim of pattern or practice discrimination, a plaintiff must establish that age, race or gender discrimination was the VEC's "standard operating procedure--the regular rather than the unusual practice." International Brotherhood of Teamsters v. United States, 431 U.S. 324, 336 (1977) (Title VII); Equal Employment Opportunity Commission v. Western Electric Company, Inc., 713 F.2d 1011, 1016 and n. 13 (4th Cir.1983) (applying pattern or practice theory to ADEA suit).
 
 
 14
 In this case, the record is devoid of any evidence to support such a claim. King's sole evidence of discrimination of any type is defendants' decision not to promote her individually. Even in the light most favorable to her, this evidence at best amounts to nothing more than "isolated ... or sporadic discriminatory acts," which are insufficient to support a pattern or practice claim. Teamsters, 431 U.S. at 336.
 
 
 15
 Moreover, the VEC proffered unchallenged statistical evidence affirmatively rebutting plaintiff's unsubstantiated allegations that the VEC's hiring and promotional practices resulted in disparate treatment of protected classes. The evidence shows that of the ten hearing officers hired between January 1, 1990 and January 30, 1992, a period including the events in plaintiff's complaint, ninety percent (90%) were female, fifty percent (50%) were African-American and thirty percent (30%) were over forty years of age. Further, as of August 1991, one month after King filed charges in the EEOC and VDPT, of all the VEC's hearing officials, eighty-three percent (83%) were female and fifty-four percent (54%) were over the age of forty, both exceeding the respective percentages in the relevant labor market. (J.A. 62.) The district court properly granted defendants' motion for summary judgment on King's pattern or practice claims.
 
 III.
 
 16
 King also asserted claims alleging that defendants discriminated against her on the basis of age, race or gender in each of the five cases in which she applied for hearing officer positions and was not promoted. In response, defendants contend that King failed to establish that but for their allegedly discriminatory motives, she would have been promoted. Plaintiff could have established a genuine issue of fact on this essential element of her claims by using either of two methods: (1) under ordinary principles of proof using direct or indirect evidence; or (2) under a judicially created scheme originating in the Title VII context and subsequently extended to ADEA cases. See Tuck v. Henkel Corporation, 973 F.2d 371, 374 (4th Cir.1992), cert. denied, 113 S.Ct. 1276 (1993).
 
 A.
 
 17
 Under traditional principles of proof, plaintiff failed to proffer any direct or indirect evidence to support her race or gender discrimination claims. With respect to her age discrimination claims, however, King relies heavily upon a statement in her affidavit, which she attributes to defendant Sperlazza. King averred that during "a number of conversations ... she [Sperlazza] expressed her dislike for older workers and how impressed she was with younger workers. She believed that the older workers were slow 'old farts.' She stated that she needed younger blood in her offices. Sperlazza stated that she did not want older employees in professional positions." (J.A. 364-65; King Affidavit at p 17.) King further averred that after she told Sperlazza her age, Sperlazza's attitude toward King changed dramatically. (Id.) Finally, King's affidavit states that appellee Smith, after informing her that he had selected another individual for one of the hearing officer positions, allegedly asked King repeatedly what Sperlazza had against her. (Id. at p 19.)
 
 
 18
 Defendants raise a procedural objection to these alleged statements, noting that they emerged for the first time in plaintiff's affidavit opposing summary judgment. Specifically, defendants argue that the court should disregard this portion of plaintiff's affidavit because, despite direct questions by their attorney, plaintiff failed to mention these crucial alleged statements in her deposition. Consequently, defendants assert that King improperly attempted to manufacture an issue of fact by contradicting her deposition testimony in her subsequent affidavit.
 
 
 19
 As noted by the defendants, King failed to include these crucial alleged statements in her charge with the EEOC filed on August 4, 1991. (J.A. 816-24.) More significantly, in response to a direct question by defendants' counsel at her deposition asking about any alleged statements made by Sperlazza, King failed to recall any such statements. (J.A. 40-41.) King responded that she could not recall any at that point. (Id.) In opposition to defendants' motion for summary judgment, however, plaintiff filed her affidavit recalling verbatim Sperlazza's alleged incriminatory statements. (J.A. 364-65.)
 
 
 20
 It is well established law in this circuit and other circuits that a party may not create a genuine issue of fact in response to a summary judgment motion by filing an affidavit that contradicts earlier deposition testimony. See Rohrbough v. Wyeth Laboratories, Inc., 916 F.2d 970, 976 (4th Cir.1990); Barwick v. Celotex Corporation, 736 F.2d 946, 960 (4th Cir.1984); see also Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1297 (7th Cir.1993); Gagne v. Northwestern National Insurance Company, 881 F.2d 309, 315 (6th Cir.1989); Perma Research and Development Company v. Singer Company, 410 F.2d 572, 578 (2d Cir.1969). But see Shaw v. Stroud, 13 F.3d 791, 804 (4th Cir.1994) (district court did not abuse its discretion in refusing to strike deposition testimony allegedly inconsistent with deponent's prior unsworn statement to private investigator and with other testimony in the record), cert. pet. filed (May 26, 1994). King urges, however, that the statements in her affidavit do not succumb to this established rule of law because she "left the door open" by stating in her deposition that she could not recall any statements made by Sperlazza at the time of her deposition.
 
 
 21
 Plaintiff's argument, however, contradicts this circuit's express language and holdings in this area:
 
 
 22
 "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.
 
 
 23
 Rohrbough, 916 F.2d at 975 (quoting Barwick, 736 F.2d at 960).
 
 
 24
 In Barwick, a products liability asbestos case, the plaintiff failed to identify any of the defendants' products as those to which he was exposed during the relevant time period, despite repeated questioning during his deposition. Barwick, 736 F.2d at 960. In response to defendants' summary judgment motion, however, the plaintiff submitted an affidavit specifically identifying products of all defendants to which he had allegedly been exposed. Id. at 960-62. The Fourth Circuit affirmed the trial court's grant of defendants' motion for summary judgment based on a finding that this contradictory affidavit failed to raise a genuine issue of fact. Id.; see also Perma Research and Development Company, 410 F.2d at 578-79 (affirming summary judgment for defendant because plaintiff's affidavit identifying incriminatory statements of defendant for the first time, despite repeated unsuccessful attempts by defendant's attorney in plaintiff's deposition to elicit such statements, was insufficient to create a genuine issue of fact).
 
 
 25
 In light of this established precedent, the statements in King's affidavit attributed to defendant Sperlazza are insufficient to raise a genuine issue of fact showing that defendants discriminated against plaintiff. After failing to identify these crucial alleged statements in her deposition to permit her to "reserve the right" to file a later affidavit in response to defendants' summary judgment motion, which affidavit is not subject to cross-examination, "would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Barwick, 736 F.2d at 960 (quoting Perma Research and Development Company, 410 F.2d at 578).
 
 
 26
 Thus, it is seen that plaintiff failed to offer any direct or indirect evidence that raised a genuine issue of fact that defendants discriminated against her on the basis of her age, race or gender.
 
 B.
 
 27
 Having failed to prove through ordinary principles of proof that defendants' failure to promote her was based on a statutorily prohibited motive, it was necessary for King to proceed under the judicially created proof scheme established in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), in order to avoid summary judgment. Under the McDonnell Douglas proof scheme, a plaintiff bears the initial burden of production to establish a prima facie case by showing that: (1) she is a member of a protected group; (2) she applied for and was qualified for an available position; (3) she was rejected for the position; and (4) the position was filled with a person outside the protected class or the employer continued to seek applicants. McDonnell Douglas, 411 U.S. at 802-04 (Title VII); Tuck, 973 F.2d at 374 (ADEA). Plaintiff's demonstration of a prima facie case creates a presumption that the employer unlawfully discriminated and shifts the burden of production to the defendants to articulate a legitimate, non-discriminatory reason, which if believed by the trier of fact, would support a finding that defendant did not unlawfully discriminate. St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2747 (1993). If the defendants sufficiently demonstrate a legitimate, non-discriminatory reason, the presumption of discrimination created by plaintiff's prima facie showing "drops from the case," and the plaintiff bears the ultimate burden of persuasion to prove that defendants intentionally discriminated against her. Id. In meeting the ultimate burden of persuasion, plaintiff may submit evidence that defendants' reasons were pretextual. Id.
 
 
 28
 The following is a list of the specific positions for which King applied and the relevant characteristics of the successful candidates as they relate to the establishment of a prima facie case:
 
 
 29
 Position No. Selectee--Race, Gender, Age At Selection
 
 
 30
 No. 790 Alexandria Cynthia Govan, black, female, 29
 
 
 31
 No. 182 Richmond South Robert Coppinger, white, male, 38
 
 
 32
 No. 146 Sterling Arventa Smith, black, female, 31
 
 
 33
 No. 415 Falls Church Jean A. Weiler, white, female, 43 (advertised March 27, 1991)*
 
 
 34
 Based on this uncontradicted evidence, plaintiff established a prima facie case for (1) age discrimination as to positions Nos. 790, 182 and 146; (2) race discrimination as to positions Nos. 182 and 415; and (3) gender discrimination as to position No. 182. However, as set forth in the district court's memorandum opinion, the VEC proffered affidavits from the hiring officials for each of these positions sufficiently demonstrating legitimate reasons for the failure to promote plaintiff. (J.A. 208-09, 217-18, 254, 295-96.) Because defendants satisfied their burden of production to demonstrate non-discriminatory reasons for the failure to promote plaintiff, the presumption of discrimination created by plaintiff's prima facie case dropped from the action. Hicks, 113 S.Ct. at 2747.
 
 
 35
 Accordingly, plaintiff bore the ultimate burden of persuasion to demonstrate that defendants' failure to promote her was based on one of the alleged improper discriminatory motives--age, race or gender. However, even in the light most favorable to plaintiff, the evidence proffered by her cannot lead to a reasonable inference that defendants' promotion decisions were based on statutorily prohibited motives. Plaintiff's evidence that certain individuals left the hearing officer position shortly after being promoted, that VEC's promotional practices are subjective, non-uniform and contain no checks or balances and that some selections were based on mutual friendships are irrelevant to the issue of whether defendants discriminated against her on the basis of a statutorily prohibited motive. Put simply, the record is devoid of any evidence that would raise a genuine issue of fact that defendants' failure to promote plaintiff to any of the hearing officer positions was based on her age, race or gender or that the defendants' proffered reasons were pretextual. See Equal Employment Opportunity Commission v. Clay Printing Company, 955 F.2d 936, 943-44 (4th Cir.1992) (affirming summary judgment for defendants based on plaintiff's failure to offer evidence that she was discharged based on her age or that defendants' proffered reasons were pretextual).
 
 
 36
 Because plaintiff failed to raise a genuine issue of fact under either ordinary principles of proof or the judicially-created McDonnell Douglas scheme, the district court properly granted defendants' motion for summary judgment on her individual claims for age, race and gender discrimination.
 
 IV.
 
 37
 Plaintiff also sets forth a separate and distinct cause of action alleging that defendants retaliated against her for filing a charge with the EEOC, in violation of 42 U.S.C. Sec. 2000e-3(a) and presumably 29 U.S.C. Sec. 623(d). It is well settled law that King's failure to raise a genuine issue of fact on her underlying discrimination claims does not necessarily require dismissal of her retaliation claim. See Ross v. Communications Satellite Corporation, 759 F.2d 355, 357 n. 1 (4th Cir.1985). In addition, the McDonnell Douglas proof scheme applies in retaliation cases, and under that scheme, to establish a prima facie case of retaliatory discrimination, plaintiff must prove that: (1) she engaged in protected activity; (2) the employer took adverse employment action against her; and (3) a causal connection existed between the protected activity and the adverse action. Id. at 364-65; see also McNairn v. Sullivan, 929 F.2d 974, 980 (4th Cir.1991).
 
 
 38
 In the present case, King alleged that as a result of the filing of her initial charge with the EEOC on July 19, 1991, defendants singled her out for oppressive supervision and constant surveillance, "demoted" her from "lead interviewer" and selectively recorded claimant complaints against her resulting in a poor performance evaluation in the fall of 1991. The district court dismissed plaintiff's retaliation claim based on a finding that she failed to satisfy the second requirement--adverse employment action. However, because some of plaintiff's evidence might be sufficient to raise a genuine issue of fact that she suffered adverse employment action, the court will assume that plaintiff established a prima facie case and analyze the remaining steps in McDonnell Douglas.
 
 
 39
 As evidence of a legitimate reason for any alleged adverse employment action, defendant Smith submitted an affidavit stating that he prepared King's evaluation based on standardized job criterion and noted any complaints filed against her in such evaluations. (J.A. 74.) Smith also averred that he reassigned King from the "lead interviewer" to the "first pay desk" position based on the "large volume of complaints" he received against her. (J.A. 73.) Thus, defendants sufficiently demonstrated a legitimate non-discriminatory reason--the numerous complaints lodged against King--for any adverse employment action taken against her. Accordingly, any presumption of discriminatory retaliation created by plaintiff's prima facie showing dropped from the case, and plaintiff bore the ultimate burden of persuasion to demonstrate that defendants retaliated against her based on the filing of her EEOC charge.
 
 
 40
 In her brief to this court, other than unsubstantiated argument, plaintiff points to no evidence raising a genuine issue of fact that defendants retaliated against her because she filed an EEOC charge or that defendants' reasons for taking any adverse employment actions were pretextual. Moreover, despite repeated questions from the bench during oral argument as to where any such evidence might be found in the record, plaintiff's counsel could not locate any, and the court's review of the record discloses none. Accordingly, summary judgment on plaintiff's retaliation claim was proper.
 
 The judgment appealed from is
 
 41
 AFFIRMED.
 
 
 
 *
 In her complaint, plaintiff also alleged that she was not promoted to a fifth position, No. 415 in Falls Church, advertised on August 24, 1990. The uncontradicted affidavit of Diane E. France established that this position was filled on November 26, 1990 by Judy Johnson, a black female under forty years of age. (J.A. 63-64.) Thus, King could assert a claim for age discrimination only based on this position. However, because plaintiff did not file her charge with the EEOC until July 19, 1991, over 200 days after the position was filed, the ADEA's 180-day filing requirement barred any such claim, as the district court correctly held. See 29 U.S.C. Sec. 626(d)(1)