875 F.2d 314
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
DATA CONTROLS NORTH, INC., Descomp, Inc., Descomp Profit
Sharing Plan, Thomas L. Ruger, Patricia A. Ruger,
John D. Greenwell, Plaintiffs-Appellants,
v.
FINANCIAL CORPORATION OF AMERICA, INC., William J. Popejoy,
Annelise Graebner Anderson, Robert M. Barton, Merrill
Butler, Edward L. Johnson, Thomas P. Kemp, Charles S. Offer,
Lawrence K. Roos, E. John Rosenwald, Jr., J. Ralph Stone,
Charles E. Young, American Savings and Loan Association,
Unknown Members of the Board of Directors of American
Savings and Loan Association, John J. Borer, Jr., Donald E.
Royer, Frank M. Rummonds, Defendants-Appellees.
 No. 88-2866.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 11, 1989.
Decided May 3, 1989.
 
 Douglas Clark Hollmann (Richard I. Kovelant, Goldman, Kruger, Kovelant & Hollmann on brief) for appellants.
 Larry Lee Simms (Wesley G. Howell, Jr., Roger W. Pincus, Gibson, Dunn & Crutcher on brief) for appellees.
 Before ERVIN, Chief Judge, and MURNAGHAN and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 A group of disgruntled investors, disappointed in losses sustained as a result of trading in stock and stock options of Financial Corporation of America (FCA), have brought an action in the United States District Court for the District of Maryland against FCA and various of its corporate officers, alleging numerous federal and state law claims. The district court granted summary judgment to the defendants on all counts and an immediate appeal followed.
 
 I.
 
 2
 The plaintiffs[1] purchased and sold the common stock of FCA and call options on FCA stock between August 17, 1984 and February 22, 1985. On March 7, 1986, the plaintiffs filed suit in an attempt to recover losses sustained by that trading.
 
 
 3
 Named as defendants were FCA and several of its officers and directors.[2] The plaintiffs alleged numerous counts, including claims based on Sec. 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. Sec. 78j(b) (1982), Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. Sec. 240.10b-5 (1987), Sec. 20(a) of the 1934 Act, 15 U.S.C. Sec. 78(a) (1982), Sec. 17(a) of the Securities Act of 1933, 15 U.S.C. Sec. 77g(a) (1982), the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Secs. 1961 et seq., and various state law and common law counts.
 
 
 4
 The essence of plaintiffs' complaint lies in the charge that the defendants failed to disclose publicly sufficiently precise information on FCA's economic condition for the fourth quarter of 1984 through March 1985. Plaintiffs allege that the defendants engaged in fraudulent conduct which included knowingly withholding information about the company in a manner that caused them to suffer losses in connection with their stock holdings and options holdings. The plaintiffs also accuse the defendants of feeding to them (and to the public at large) information that did not serve as an accurate indication of FCA's financial condition, which in turn caused them to incur further losses.
 
 
 5
 The defendants moved for summary judgment on all counts. A few weeks before the summary judgment hearing, the plaintiffs learned of an FCA document which related to past activities of FCA. The document was a Proof of Loss Statement submitted by FCA to its insurers on June 27, 1986. The Statement detailed schemes undertaken prior to the plaintiffs' trading, by FCA's previous management, to accelerate income and postpone losses. After several alleged difficulties in securing the document, the plaintiffs obtained it the night before the hearing. The document was entered into evidence and was extensively discussed at the hearing, but was not mentioned in the district court's eventual opinion.
 
 
 6
 The district court (Hargrove, J.) granted summary judgment in favor of the defendants on all claims.
 
 II.
 
 7
 The district court based its grant of summary judgment on several grounds. As we find the evidence insufficient to sustain the plaintiffs' claims, we limit consideration to that one ground. We do not address the other issues raised below.[3]
 
 
 8
 The defendants, in moving for summary judgment, have the burden of showing that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Barwick v. Celotex Corp., 736 F.2d 946, 958 (4th Cir.1984). Once the defendants have met that burden, the plaintiffs must go forward and produce sufficient evidence to support their contentions. "A mere scintilla of evidence is not enough to support a fact issue; there must be evidence on which a jury might rely." Barwick, 736 F.2d at 958-59 (quoting Seago v. North Carolina Theaters, Inc., 42 F.R.D. 627, 640 (E.D.N.C.1966), aff'd, 388 F.2d 987 (4th Cir.1967), cert. denied, 390 U.S. 959 (1968)). The standard for granting summary judgment is akin to that of granting a directed verdict:
 
 
 9
 [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.
 
 
 10
 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations deleted).
 
 
 11
 In granting summary judgment, the district court found, inter alia, that the plaintiffs could produce no evidentiary support for their stockholder claims against the defendants. The plaintiffs now allege that the district court misunderstood their cause of action and contend that the evidence was more than sufficient to sustain their claims.
 
 
 12
 After a careful review of the record, including the Proof of Loss Statement, we must agree with the district court that the plaintiffs have failed to sustain the evidentiary burden necessary to resist summary judgment. Aside from the plaintiffs' conclusory allegations, there is no evidence of any affirmative misrepresentation or nondisclosure on the part of the plaintiffs.
 
 
 13
 Specifically, we concur with the district court's finding that the plaintiffs have offered no evidence whatsoever of scienter, proof of which is essential to maintenance of the plaintiffs' federal and state statutory claims and the claims grounded in common law fraud. In Chris Craft Industries, Inc. v. Piper Aircraft Corp., 480 F.2d 341, 364 (2d Cir.), cert. denied, 414 U.S. 910 (1973), the court stated that, to show scienter, the plaintiff must establish that the defendant either (1) knew the material facts that were misstated or omitted, or (2) failed or refused to ascertain said facts when they were available to him or could have been discovered by him with reasonable effort. Plaintiffs can show neither. There is no evidence of any affirmative misrepresentation or nondisclosure by the defendants, nor of any false statements or misleading statements with knowledge they were false. The plaintiffs' bald contentions of concealment are insufficient to establish a prima facie case that would withstand a motion for directed verdict. Anderson v. Liberty Lobby, 477 U.S. at 250-51.
 
 
 14
 To compensate for the evidentiary deficiency identified by the district court, the plaintiffs have attempted on appeal to portray the Proof of Loss Statement as an evidentiary panacea on almost all counts. We believe that the Statement, while perhaps relevant, falls short of the evidentiary threshold needed to render summary judgment inappropriate.
 
 
 15
 Plaintiffs allege the Proof of Loss Statement demonstrates that the previous head of FCA, Charles Knapp, had engaged in a variety of unscrupulous and financially unsound practices, never disclosed to the public, which had left FCA in dire straits. The plaintiffs contend that they based their investment decisions on the overly optimistic picture of FCA's financial condition painted by the statements of William Popejoy, one of the defendants, who replaced Knapp and assumed control of FCA in August of 1984, shortly after the plaintiffs commenced trading. Popejoy, plaintiffs insist, was aware of Knapp's activities and the resulting detriment to FCA, yet continued to issue positive pronouncements as to FCA's financial future.
 
 
 16
 Plaintiffs have failed, however, to offer any evidence to demonstrate (1) that Popejoy's statements were, indeed, false or misleading, (2) that Popejoy was aware of Knapp's past activities at the time plaintiffs were trading, or, perhaps most importantly, (3) that in any practical sense the few optimistic statements of Popejoy, even if construed as affirmatively misleading financial prognostication, could possibly outweigh the large amount of negative information publicly disseminated by FCA's management.
 
 
 17
 Popejoy's statements, while hopeful, cannot be construed out of context as misrepresenting the financial condition of FCA. The isolated statements of one corporate officer did not constitute the entire range of information available to sophisticated investors such as the plaintiffs. As the district court noted, the plaintiffs were actually aware of a number of events that portrayed FCA in an unflattering light during the fall of 1984. The plaintiffs were aware that the SEC required FCA to restate its earnings for the first half of 1984, turning a previously reported $75.3 million profit into a $79.9 million loss. The market reacted predictably to news of that character and the value of FCA stock dropped substantially. Plaintiffs were also aware of the withdrawal of over $6.8 billion from American Savings & Loan, FCA's prime asset, over a six week period from August to October, 1984. And plaintiffs knew that, due to the aforementioned developments, FCA commissioned a task force of real estate experts to perform an independent review of FCA's loan portfolio and its property holdings.
 
 
 18
 The record also indicates that plaintiffs were on notice of other negative information; announced plans for "substantial" reductions in FCA's work force by the end of 1984; press accounts of FCA's financial difficulties, including one particularly dire assessment of the company by Mr. Popejoy in the Wall Street Journal of January 31, 1985, which warned that FCA would have to "more than double" its $97 million loan loss reserves for the fourth quarter of 1984; and a published notice from FCA's accountants approximately one week later that a preliminary loss figure for the year 1984 stood at some $390 million. The plaintiffs do not dispute their knowledge of the negative information disseminated, or offer any legitimate reason why they were justified in disregarding it to focus solely on the disputed statements of Popejoy.
 
 
 19
 On appeal, plaintiffs have continued to stress that the district judge misunderstood their case. If the claim is at all true, we believe the cause lies in the apparent course change effected by the plaintiffs when they got their hands on the Proof of Loss Statement.
 
 
 20
 Originally, the core of the plaintiffs' argument was that the defendants had concealed the status of their loans and real estate holdings, particularly as reflected by the losses announced for 1984. Considering the long litany of negative information announced by FCA, the court was undoubtedly correct in finding no evidence of affirmative misrepresentation or affirmative nondisclosure on the part of the defendants.
 
 
 21
 Upon acquisition of the Proof of Loss Statement, plaintiffs attempted to allege nondisclosure of not only the status of the loans and holdings, but also how they got that way. Unfortunately for the plaintiffs, their new theory is also bereft of evidentiary support. A 1986 report detailing activities prior to the plaintiffs' dealing is insufficient evidence of knowing nondisclosure or material misstatement during the period of plaintiffs' trading. Further, as long as FCA was honest about the present bleak financial condition of the corporation, the corporate misadventures of a prior administration are not relevant. Although the plaintiffs now contend the defendants had a duty to correct previous management's materially false and misleading statements connected to the schemes contained in the Proof of Loss Statement, there is no proof the defendants knew of the schemes during the period of plaintiffs' trading, and therefore no proof the defendants were aware of the veracity of previous FCA statements. The plaintiffs present an interesting theory, but the fact remains that they cannot bootstrap their way past their previous evidentiary deficiency by superimposing a conspiracy to cover up fraud when all they can offer is proof of the fraud by a predecessor and not of the cover-up by the defendants.
 
 
 22
 Indeed, the Proof of Loss Statement indicates the reconstruction of prior misdealing was an ongoing process:
 
 
 23
 Various components of the loss, and the conduct directly causing such loss, were discovered by the Company at various times following the resignation of the Company's former chief executive, Charles W. Knapp, on August 28, 1984 as a result of the receipt and evaluation of certain investigations undertaken by new management. Thus, it is impossible to pinpoint a particular "date" of "discovery" other than by general reference to the period commencing with the fourth quarter of 1984 through mid November 1985.
 
 
 24
 (Emphasis added).
 
 
 25
 On the other hand, there is support for the defendants' contention that, as "components" of the damages were identified, they released reasonably firm information in a timely and reasonable fashion. Plaintiffs began their purchase of FCA common stock and options contracts on August 17, 1984, shortly before Mr. Knapp was relieved of his command of FCA. On October 23, 1984, defendants announced the appointment of an independent task force to investigate FCA's real estate holdings and problem loans and to evaluate the adequacy of the company's loan loss reserves. Popejoy announced on January 31, 1985 that loan loss reserves would be more than doubled on the basis of the task force's recommendations. FCA on March 8, 1985 announced estimated figures for fourth quarter 1984 and 1984 year-end losses which were primarily attributed to the increase in loan loss reserves. FCA on April 1, 1985 reported the fourth quarter 1984 and 1984 year-end losses. On June 27, 1986, the Proof of Loss Statement was submitted.
 
 
 26
 As the final component of the plaintiffs' evidentiary failure, the district court questioned the materiality of the information allegedly concealed. In a Sec. 10(b) or Rule 10b-5 context, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." Basic, Inc. v. Levinson, --- U.S. ----, ----, 108 S.Ct. 978, 983 (1988) (quoting TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976)). Given the bleak financial picture painted by available public information on FCA, information of which the plaintiffs were aware, it is hard to gainsay the district court's finding that the allegedly concealed information was not material.
 
 
 27
 Finding the plaintiffs' further evidentiary contentions devoid of merit, the judgment of the district court is
 
 AFFIRMED.[4]
 
 
 [1]
 The plaintiffs are as follows: Data Controls North, Inc., a Maryland corporation, Descomp, Inc., a Delaware corporation, Thomas Ruger ("Ruger"), an officer and director of both aforementioned companies, his wife, Patricia Ruger, Descomp Profit Sharing Plan, an unincorporated pension plan owned by employees of Descomp, and John Greenwell, President, director, and shareholder of Data Controls North
 
 
 [2]
 In addition to FCA, plaintiffs sued William Popejoy, Chairman of the Board and Chief Executive Officer of FCA; FCA Board of Directors members Annelise Graebner Anderson, Robert Barton, Merrill Butler, Edward Johnson, Thomas Kemp, Charles Offer, Lawrence Roos, John Rosenwald, Jr., Ralph Stone, Charles Young; American Savings & Loan Association; and FCA officers Donald Royer and John Borer
 
 
 [3]
 We do note that plaintiffs' claims based on an alleged private right of action under Sec. 17(a) of the Securities Act of 1933, 15 U.S.C. Sec. 77g(a), are foreclosed by our recent decision in Newcome v. Esrey, --- F.2d ---- (4th Cir.1988) (en banc )
 
 
 [4]
 The Appellants' motion to allow an attachment to their reply brief, deferred until after oral argument, is granted