**ORDERED** that the judgment of the Territorial Court awarding appellee $50,-000 for emotional and psychological damages is **VACATED.** It is further

**ORDERED** that the Territorial Court **DISMISS WITH PREJUDICE** appellee's claim for intentional infliction of emotional distress. It is further

**ORDERED** that the Clerk, twenty-one days from the date of this Order, issue the appropriate Mandate to the Clerk of the Territorial Court and shall **CLOSE** this matter.

ROTOREX COMPANY, INC., Plaintiff,

v.

KINGSBURY CORPORATION, Defendant.

No. Civ. H–97–1917.

United States District Court, D. Maryland.

April 1, 1999.

Thomas M. Lingan, William D. Dolan, III and Venable, Baetjer and Howard, Baltimore, MD, for plaintiff.

Sarah Chapin Columbia, Eric B. Hermanson and Choate, Hall and Stewart, Boston, MA, for defendant.

ALEXANDER HARVEY, II, Senior District Judge.

This civil action arises as a result of a contract dispute between plaintiff Rotorex Company, Inc. ("Rotorex") and defendant Kingsbury Corporation ("Kingsbury"). Rotorex manufactures air compressors for air conditioning units at its facility located in Walkersville, Maryland.[1] Kingsbury's

---

1. Rotorex is a wholly-owned subsidiary of Fedders Corporation (formerly NYCOR, Inc.)

principal place of business is located in Keene, New Hampshire, and Kingsbury designs and sells assembly line equipment, including automated assembly systems.

In the late 1980s, Rotorex began to investigate the use of an automated alternative to its manual assembly system. Following negotiations between the parties, Rotorex and Kingsbury entered into a contract[2] whereby Kingsbury would design and manufacture an automated assembly system for purchase by Rotorex and installation in its plant. Pursuant to the parties' agreement, Kingsbury did in fact design and manufacture such a system, and it was delivered and assembled at Rotorex's plant in or about July of 1995.

In this civil action, the parties dispute the terms and conditions of the contract between them, and they also dispute whether each party satisfied its performance obligations under the contract. In its complaint, plaintiff Rotorex alleges that defendant Kingsbury breached the contract between the parties, and plaintiff seeks substantial damages under various legal theories. Defendant Kingsbury in turn has filed a counterclaim charging Rotorex with breach of contract.

Pursuant to Scheduling Orders entered by the Court, the parties have engaged in extensive discovery. Presently pending before the Court are a motion for partial summary judgment as to contract formation and terms filed by plaintiff Rotorex and also a motion for partial summary judgment filed by defendant Kingsbury. The parties have submitted lengthy memoranda and voluminous exhibits in support of and in opposition to the pending motions, including excerpts from numerous depositions taken during discovery. A hearing on the pending motions has been held in open court. For the reasons stated herein, plaintiff's motion for partial summary judgment will be granted in part and denied in part, and defendant's motion for partial summary judgment will be granted in part and denied in part.

## I

### Background Facts

When Rotorex decided to explore the feasibility of switching from a manual assembly system to an automated one, Kingsbury was one of several manufacturers which Rotorex consulted. Discussions with Kingsbury personnel began in the late 1980s. There were several design proposals submitted by Kingsbury in the early 1990s, and in February of 1993 Rotorex presented Kingsbury with a set of formal specifications. On May 23, 1993, Peter Austin ("Austin"), Kingsbury's Sales Manager, submitted a formal Proposal to Rotorex; based on the latter's specifications (Proposal # 14020593A). This Proposal detailed an automated assembly system capable of a gross production rate of 480 compressors per hour.

Rotorex had appointed Jack Andersen ("Andersen") as its Project Engineer to oversee the acquisition of an automated assembly system. Over the next several months after May of 1993, Andersen suggested that various additions and revisions be made to Kingsbury's Proposal. As a result, a revised Proposal dated August 18, 1993 was submitted by Kingsbury to Rotorex (Proposal # 14020593A, Revision 1). Both the original Proposal and the revised Proposal contained boilerplate language termed "Standard Terms and Conditions of Sales" ("Kingsbury's Standard Terms"). Kingsbury's Standard Terms included the following language:

ACCEPTANCE: The proposal ... will become void unless accepted by the Purchaser within 90 days of the date hereof. Purchaser's order must be signed by a duly authorized agent, must indicate acceptance of Seller's proposal, if any terms of Seller's proposal are changed,

---

**2.** The parties agree that they did in fact enter into a contract. However, they dispute the terms and conditions of that contract.

and can be accepted only at the HOME OFFICE of the Seller in Keene, New Hampshire, U.S.A. The resulting contract shall ... be governed by the laws of the State of New Hampshire.... Any of the terms and conditions of the Purchaser's order which are in conflict with, inconsistent with, or in addition to the terms and conditions set forth herein shall [not] [3] become a part hereof unless expressly agreed to in writing by the Seller.

\* \* \* \* \* \*

PRODUCTION ESTIMATES. Where production figures are supplied by Seller, it is understood that they are estimates based on information supplied by Purchaser concerning the limits of accuracy and finish required, condition of material and components as supplied to the equipment, machinability and amount of material to be removed, handling facilities provided and locating points as stated in the proposal, and are not guaranteed.

\* \* \* \* \* \*

WARRANTY. Seller warrants that items of its own manufacture or equipment proposed to be furnished under this contract except where failure is due to extraordinary wear and tear, abuse, overloading or alternation [sic] not approved by Seller, will be free from defect in material and workmanship under normal use and service for a period of twelve (12) months from the date of delivery.... SELLER DISCLAIMS ALL OTHER WARRANTIES EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, THE WARRANTY OF MERCHANTABILITY AND THE WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE. The exclusive remedy of the Purchaser shall be the replacement by Seller of any material and parts, F.O.B. Keene, New

Hampshire, found to be defective within such warranty period without any obligation of the Seller for installation of replacement parts. It is further understood that the Seller shall in no event be liable for consequential damages....

Negotiations between the parties continued through the Fall of 1993. On December 3, 1993, Rotorex's Purchasing Manager, Steve Stock ("Stock") met with Austin at Kingsbury's home office in Keene, New Hampshire, at which time the final terms of the deal were negotiated. Certain agreements were reached based in part on Kingsbury's August 18 Proposal. After Stock's meeting with Austin, a revised proposal dated December 3, 1993 was prepared (Proposal # 14020593A, Revision 2). Thereafter, Rotorex forwarded to Kingsbury its Purchase Order # 932735 dated December 22, 1993 (the "December 22 Purchase Order"). That Purchase Order, which was not received by Kingsbury until December 27, 1993, recited the following terms:

[Contract price of $4,670,231] includes all delivery to Rotorex and late penalty of .5% per week not to exceed 2% for delivery after 8/31/95. This order is for an automated assembly system as per Rotorex specifications dated 8/5/93 in reference to Kingsbury Quotation # 14020593A, Revision 1 dated 8/18/93. Two year warranty included. System includes but is not limited to a complete compressor final assembly operation with end cap welding machines (3) including automatic load and unload. System is to support 39F and 48F production according to the Rotorex machine tool standards, the specifications and the final negotiations between Steve Stock and Peter Austin. No changes may be made to this purchase order or the system specification without written authorization from Rotorex Purchasing.

---

**3.** It is apparent from its context that this sentence must be read with a "not" inserted here. The parties do not disagree.

The back of this Purchase Order contained Rotorex's boilerplate terms and conditions ("Rotorex's Standard Terms"), some of which were in conflict with Kingsbury's Standard Terms. Included are the following provisions:

WARRANTY 6. Seller warrants that the goods and/or services covered by this purchase order shall be in full conformity with all specifications, descriptions, drawings or designs contained or incorporated by reference in this purchase order or submitted to Seller herewith, and with any sample or samples supplied or adopted by Buyer. It is further agreed that the goods and/or services will be merchantable, free from defects in material and workmanship, and fit for the use and purpose intended by the Buyer, and Seller has been informed of such aforesaid use and purpose, and hereby acknowledges that Buyer us [sic] relying on Seller's skill and judgment to select or furnish suitable goods and/or services. These warranties shall survive any inspection, delivery, acceptance or payment by the Buyer of or for the goods and/or services. Said warranties shall be in addition to any warranties, express or implied, of additional scope made by Seller to Buyer, and shall amplify and not circumscribe, such additional warranties.

\* \* \* \* \* \*

INTERPRETATION 17. The validity, interpretation and legal effect of this order and any supplement or modification hereto, shall be governed by the laws of the State of New York.

On January 5, 1994, Austin addressed a letter to Stock which provided as follows:

This is to acknowledge the receipt of your formal Purchase Order # 932735 for the Compressor Final Assembly System that we negotiated on December 3, 1993 and to clarify and/or take exception to certain items listed under the Terms and Conditions on the reverse side of the purchase order that we feel are not applicable.

Even though the purchase order was received at Kingsbury on December 27, I was not able to review it until this week because of the Christmas and New Year holidays. Because of this I was not able to acknowledge it within the (10) days specified under Item 1 of the Acceptance clause. I am assuming this will not be a problem.

Regarding Item 2 under Deliver, Kingsbury believes this clause is not applicable in lieu of the previously negotiated late deliver penalty clause as stipulated on the face of your purchase order.

Regarding Item 12 under Taxes, Kingsbury takes exception to this clause in that we were not previously requested to include the cost of any applicable taxes in our quotation for this equipment and thus the additional cost to cover such taxes was not included in our proposal.

Our acceptance of the subject purchase order is based on the above exceptions and the clarifications outlined in Neil Coughlin's letter to you dated December 22, 1993. Please acknowledge that you agree with the above at your earliest convenience.

On January 7, 1994, Stock signed and returned Austin's letter and wrote "Accepted" above his signature.

Successful and timely completion of the project required the cooperation of both parties. Under the contract, Rotorex was obligated to supply component parts for a number of essential steps. Substantial numbers of component parts were required for two important tests: first, an initial auto-cycle debug or "KAM tryout" at Kingsbury's plant, and second, a formal "runoff" or tryout of the system at the Kingsbury plant which Rotorex personnel would attend and evaluate to determine whether or not Rotorex would initially accept the system. Once Rotorex had initially accepted the system, it was to be shipped to the Walkersville plant, reassembled and thereafter followed by another

round of tests and debugging efforts designed to make the system "production capable."

There were various delays in the delivery and installation of the system at the Walkersville plant. Each side blames the other for the delays which ensued. The original agreed delivery date of April 3, 1995 was not met. A formal tryout was eventually held at the Kingsbury plant in late May of 1995, attended by Rotorex personnel. On May 30, 1995, Andersen wrote Kingsbury and accepted delivery of the system conditioned on the resolution of various listed problems. Austin responded by letter dated June 2, 1995 agreeing that acceptance was contingent upon the resolution of several problems but taking exception to three specific items listed in Andersen's letter. Delivery, installation and testing at the Rotorex plant then occurred. Thereafter, Rotorex paid some $4.2 million dollars to Kingsbury, representing 90% of the purchase price. There had been a 5% down payment made earlier, but Rotorex has declined to pay the remaining 5% due under the contract.

After the system was shipped and reassembled at the Walkersville plant, it experienced a number of mechanical and controls problems. The parties dispute the scope and significance of these problems. According to Kingsbury, the problems encountered were minor and were to be expected under the circumstances. According to Rotorex, the problems were pervasive, and Rotorex contends that since there were fundamental design flaws in the system and since it never consistently performed at the rate promised, the contract was breached by Kingsbury.

This civil action was filed in this Court on June 13, 1997.

## II

### The Parties' Claims

In Count One of the complaint, plaintiff Rotorex seeks a recovery for breach of express warranty. It is alleged that the system delivered and installed by Kingsbury is not capable of producing compressor units of acceptable quality at the rates specified on a consistent basis.

Count Two asserts a claim of breach of implied warranty. Plaintiff alleges that defendant Kingsbury has breached an implied warranty that the system would be free from defects in workmanship and materials and fit for the use and purposes intended by Rotorex.

In Count Three, plaintiff asserts a claim of breach of contract. It is alleged that Kingsbury agreed in the contract to deliver and install a satisfactory system in April of 1995, that the system was not delivered until July of 1995 and that the system is not and cannot be made to be fully operable.

Count Four is based on a theory of negligent misrepresentation. It is alleged that defendant Kingsbury negligently misrepresented that it had the capacity to design and manufacture a system which would be capable of producing compressor units at a rate and of a quality required by the contract.

Count Five seeks a recovery for the negligent design, manufacture and installation of the system in violation of operational specifications and other terms of the contract.

As relief, plaintiff Rotorex seeks $10,000,000 in damages, including sums paid or owed by Rotorex to Kingsbury for the purchase of the system, profits from past and future lost sales attributable to deficiencies in the system, past and future costs incurred by Rotorex in attempting to correct defects and deficiencies in the system and costs incurred by Rotorex in running a manual production line in order to increase production.

Defendant Kingsbury has filed an answer and counterclaim. In its counterclaim, Kingsbury seeks a recovery from Rotorex under theories of breach of con-

tract (Count I), quantum meruit (Count II) and breach of duty of good faith and fair dealing (Count III). Damages are claimed by Kingsbury representing amounts still due and owing under the contract, the fair and reasonable value of additional services performed by Kingsbury and the additional expenses incurred by Kingsbury as a result of the alleged breach by Rotorex of its duty of good faith and fair dealing.

## III

### The Pending Motions

In its motion for partial summary judgment, plaintiff Rotorex asks this Court to grant partial summary judgment in its favor by determining as a matter of law the terms of the contract between the parties. Rotorex argues that its December 22, 1993 Purchase Order to Kingsbury constituted an offer by Rotorex to purchase from Kingsbury the proposed automated compressor assembly system, that Kingsbury's January 5, 1994 letter was an acceptance of that offer, and that on January 7, 1994, Rotorex agreed to certain clarifications contained in the January 5, 1994 letter. By way of its motion, Rotorex asks this Court to determine as a matter of law that the contract between the parties consists of the December 22 Purchase Order with all the terms and conditions contained therein, subject to the clarifications in Kingsbury's January 5, 1994 letter. Rotorex accordingly contends that Rotorex's Standard Terms are controlling.

In opposing plaintiff's motion for partial summary judgment, defendant Kingsbury contends that its December 3 Proposal was an offer which was accepted by Stock at its Keene, New Hampshire offices on December 3, 1993. According to defendant Kingsbury, a contract came into place on that date, and Kingsbury's Standard Terms are therefore controlling. Kingsbury contends that the December 22 Purchase Order was nothing more than a formal confirmation of the agreement previously reached and that Rotorex's Standard Terms do not form any part of the agreement between the parties because they conflict with Kingsbury's Standard Terms.

By way of its motion for partial summary judgment, defendant Kingsbury asks this Court to enter judgment in its favor on all five counts of the complaint and also on Count I of the counterclaim. According to defendant Kingsbury, plaintiff's tort claims for negligent misrepresentation and for negligent design, manufacture and installation are barred as a matter of law by the economic loss doctrine. Relying on the Uniform Commercial Code and principles of contract law, Kingsbury argues that plaintiff's claims for breach of express warranty, breach of implied warranty and breach of contract are barred by provisions of the contract between the parties, by virtue of Rotorex's acceptance of the system, and by virtue of Rotorex's failure to fulfill its obligations under the contract. Defendant Kingsbury further contends that under the Uniform Commercial Code, it is entitled to summary judgment on its claim seeking payment by Rotorex of the balance of the agreed purchase price.

In opposing defendant's motion for partial summary judgment, plaintiff Rotorex contends that defendant Kingsbury has misconstrued the terms of the contract between the parties. According to Rotorex, there are express and implied warranties in the contract which have been breached by Kingsbury, and its tort claims are not barred by the economic loss doctrine. Rotorex further maintains that Kingsbury is not entitled to a recovery under Count I of its counterclaim because Rotorex never finally approved the system, and because Rotorex is entitled to a set-off of any sums owed because of Kingsbury's breach of the contract.

## IV

### Summary Judgment Principles

It is well established that a party moving for summary judgment or partial sum-

mary judgment bears the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment or partial summary judgment as a matter of law. *Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir.1984). The movant's burden may be met by consideration of affidavits, exhibits, depositions and other discovery materials. *Id.* The burden is on the moving party at the summary judgment stage to show that there is an absence of evidence to support the nonmoving party's position. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

While the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the party opposing the motion, *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985), when the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). " 'A mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.' " *Barwick,* 736 F.2d at 958–59 (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 640 (E.D.N.C.1966), *aff'd,* 388 F.2d 987 (4th Cir.1967), *cert. denied,* 390 U.S. 959, 88 S.Ct. 1039, 19 L.Ed.2d 1153 (1968)). Moreover, only disputed issues of *material* fact, determined by reference to the applicable substantive law, will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Fourth Circuit has stated that, with regard to motions for summary judgment, the district courts have "an affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th

Cir.1987) (quoting *Catrett,* 477 U.S. at 323–24, 106 S.Ct. 2548).

Applying these principles to the facts of record here, this Court has concluded that plaintiff's motion for partial summary judgment must be granted in part and denied in part and that defendant's motion for partial summary judgment must be granted in part and denied in part.

## V

### *Plaintiff's Motion for Partial Summary Judgment—Contract Formation and Contract Terms*

#### (a)

##### *Propriety of Plaintiff's Rule 56 Motion*

 In opposing plaintiff's motion for partial summary judgment, defendant Kingsbury first contends that the motion is procedurally improper and should not be entertained by this Court. According to Kingsbury, plaintiff Rotorex is not entitled under Rule 56 to seek a court ruling addressing as a matter of law the issue of what documents and terms form the basis of the contract between the parties. The Court would disagree.

Rule 56(a) permits a party seeking to recover upon a claim to move for summary judgment "in the party's favor upon all *or any part thereof.*" (Emphasis added). Even though Rotorex is not here seeking judicial resolution of its entire claim, the Court's determination as a matter of law concerning the documents which set forth the terms of the contract between the parties will serve the desirable goal of Rule 56 of expediting this litigation. In this particular case, the resolution of many other disputed issues hinges on the Court's preliminary determination of the terms and provisions of the contract between the parties. As the Advisory Committee Notes to the 1946 amendment to Rule 56 have observed: "The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case. This adju-

dication ... serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact."

Kingsbury's reliance on *Capitol Records, Inc. v. Progress Record Distrib., Inc.*, 106 F.R.D. 25, 29 (N.D.Ill.1985) and on other decisions of the Northern District of Illinois is misplaced. Indeed, the Court in *Capitol Records* approved just such a resort to Rule 56 as has occurred here, noting that the Rule "allows a court, on a proper motion for summary judgment, to frame and narrow the triable issues if the court finds that such an order would be helpful to the progress of the litigation." *Id.* at 29–30.

Under circumstances similar to those present in this case, numerous courts have entertained and decided motions for partial summary judgment addressing particular issues. *See, e.g., Shee Atika, Inc. v. Sealaska Corp.*, 1993 WL 760381, *1 (D.Alaska, Feb. 22, 1993) (prior to trial, determining that "[t]he rock, sand and gravel belong to Sealaska, road building is not an incidental use and the facts do not excuse Shee Atika from paying a reasonable royalty."); *Hittman Nuclear & Dev. Corp. v. Chem–Nuclear Systems*, 1979 WL 1749, *4 (D.Md., Nov.26, 1979), (considering a motion for partial summary judgment and determining the legal effect of facts of record). Based on these authorities, this Court is satisfied that it may properly address under Rule 56 the parties' dispute concerning the formation of and the terms of the contract between them.

### (b)

### *Formation of the Contract*

■ Defendant Kingsbury next challenges Rotorex's contention that the December 22 Purchase Order constituted an offer and that the contract arose when the offer was accepted by Austin's January 5, 1994 letter. According to Kingsbury, the contract arose on December 3, 1993, when Stock and Austin met in Keene, New Hampshire.,

Following its review of the voluminous record here, this Court concludes that a binding contract was reached between the parties on December 3, 1993. The provisions agreed upon on that date are contained in the December 3 Proposal, a document which was prepared after final agreement was reached. Evidence of record establishes that Rotorex orally accepted the terms and conditions of that Proposal. Although the written provisions themselves may be susceptible of different interpretations, extrinsic evidence establishes that a binding contract arose on December 3, 1993. In *World–Wide Rights Ltd. Partnership v. Combe, Inc.*, 955 F.2d 242, 245 (4th Cir.1992), the Fourth Circuit provided guidance for a district court considering questions of contract interpretation raised by way of a motion for summary judgment. The Court explained:

Only an unambiguous writing justifies summary judgment without resort to extrinsic evidence, and no writing is unambiguous if "susceptible of two reasonable interpretations." *American Fidelity & Casualty*, 354 F.2d at 216. The first step for a court asked to grant summary judgment based on a contract's interpretation is, therefore, to determine whether, as a matter of law, the contract is ambiguous or unambiguous on its face. If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue. Even where a court, however, determines as a matter of law that the contract is ambiguous, it may yet examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if that evidence is, as a matter of law, dispositive of the interpretive issue, grant summary judgment on that basis. [citations omitted]. If, however, resort to extrinsic evidence in

the summary judgment materials leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact.

Stock, who was Rotorex's Purchasing Manager, traveled to Keene and met on December 3 with Austin, Kingsbury's Sales Manager. Stock and Austin entered into negotiations which led to Stock's acceptance on behalf of Rotorex of Kingsbury's proposal for the manufacture and delivery of an automated assembly system. The agreement reached was based primarily on Kingsbury's August 18 Proposal with the following modifications and additions: a projected delivery date of April 3, 1995, a stipulated damages provision capping Kingsbury's liability for late delivery, an extended two-year warranty covering Kingsbury's conveyor system, a $50,000 reduction in the total purchase price, and the final payment terms (5% down with the purchase order, 90% after the system was accepted by Rotorex for shipment; and 5% after system approval at Rotorex). The final terms were incorporated into a document dated December 3, 1993, which was designated "Proposal # 14020593A, Rev. # 2."

Although the documents at issue are not unambiguous, there is compelling extrinsic evidence in the record here establishing that a binding contract was entered into by the parties at Kingsbury's offices in Keene, New Hampshire on December 3, 1993. Management personnel of both Rotorex and Kingsbury have acknowledged that an agreement was reached on December 3. Particularly significant is the understanding of Stock, who negotiated the agreement on behalf of Rotorex. Shortly after the meeting with Austin, Stock sent an interoffice memorandum to senior management personnel of Rotorex stating that "On Friday, Dec. 3, I met with Pete Austin and finalized the contract with Kingsbury." Evidence indicates that Stock had acted pursuant to provisions of the Acceptance clause contained in Kingsbury's Standard Terms by traveling to Keene to participate in a meeting to negotiate and enter into a contract.[4] On December 22, 1993, Neil Coughlin, Kingsbury's Vice President of Sales and Marketing, sent a letter to Stock thanking him "for your most valid order" and clarifying certain terms of the agreement.

■ The fact that Rotorex later sent a Purchase Order to Kingsbury dated December 22, 1993 was not, as argued by Rotorex, the document which contains the final terms and conditions of the contract between the parties. Indeed, the December 22 Purchase Order is further proof that a binding contract already existed. That document (which was not received by Kingsbury until December 27) states on its face that its purpose was to confirm a prior order. Included is the language: "Confirming: yes" and "Order date: 12/03/93." Internal correspondence of Rotorex and the deposition testimony of Stock negate Rotorex's contention that it did not place a formal order until December 22. In his deposition testimony of May 15, 1998, Stock described the December 22 Purchase Order as one "issued as a result of the contract with Kingsbury."[5] In discussing Rotorex's December 22 Purchase Order, Stock testified as follows:

---

4. The Acceptance clause can reasonably be interpreted as requiring Rotorex to accept Kingsbury's proposal at the latter's home office in Keene.

5. Plaintiff's reliance on Stock's recently executed Declaration is misplaced. The conclusory assertions made by Stock in that document are directly contrary to sworn deposition testimony previously given by him in this case. The Fourth Circuit has held that a district court, in granting a motion for summary judgment, is justified in disregarding the affidavit of a witness when it conflicts with that witness' earlier deposition testimony. *Rohrbough v. Wyeth Laboratories, Inc.,* 916 F.2d 970, 976 (4th Cir. 1990). *See also Barwick v. Celotex Corp.,* 736 F.2d 946, 960 (4th Cir.1984) and *Parker v. Davis,* 900 F.Supp. 788, 793 (D.Md.1995).

Q: What is the meaning of the phrase "Confirming: yes"?

A: This document is confirming a conversation or placement of the order that's already been done with a supplier—or the supplier in question.

Q: So, as of the date of this document, the order had already been placed and the contract had already been negotiated?

A: That is correct.

In his memorandum of December 6, 1993, noting that he had met with Austin on December 3 and "finalized the contract," Stock stated "the Purchase Order was placed as per Rotorex's specifications." In his letter of April 6, 1995 complaining that Kingsbury had failed to comply with provisions of the contract, Saul Giordano, Jr., Chief Executive Officer of Rotorex's parent, stated: "On December 3, 1993, Rotorex, a subsidiary of NYCOR, issued its Purchase Order to Kingsbury for a compressor assembly system ..." He threatened "to cancel this order" if Kingsbury did not deliver the system in accordance with its provisions.

It is thus apparent from the record here that Rotorex and Kingsbury entered into a binding contract on December 3, 1993. The typewritten Purchase Order of December 22 served as confirmation of the earlier deal which had been finalized.

■ Evidence of record further establishes that the December 3 contract was later modified by agreement of the parties. On December 27, 1993, Kingsbury received the Rotorex Purchase Order of December 22, 1993. That Purchase Order proposed additional terms to be added to the contract, namely certain provisions contained in Rotorex's Standard Terms which conflicted in some respects with Kingsbury's Standard Terms. These additional and conflicting terms did not initial-ly become part of the contract because under Kingsbury's Standard Terms, conflicting provisions of the Rotorex order would not become a part of the agreement unless expressly agreed to in writing by Kingsbury. However, Kingsbury did in fact expressly agree in writing to those conflicting terms. By his letter of January 5, 1994, Austin accepted Rotorex's offer to substitute its boilerplate terms for conflicting boilerplate terms in Kingsbury's December 3 Proposal, with certain exceptions noted in his letter.[6] It is clear from Austin's January 5 letter that he had read, understood and accepted all of Rotorex's Standard Terms except for Items 2 and 12. By way of his letter of January 7, 1994, Stock confirmed Kingsbury's acceptance of the additional terms contained in the December 22 Purchase Order, with the exceptions noted by Austin.

What occurred here is addressed by § 2–207 of the Uniform Commercial Code, which provides as follows:

§ 2–207. Additional terms in acceptance or confirmation.

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) The offer expressly limits acceptance to the terms of the offer;

(b) They materially alter it; or

(c) Notification of objection to them has already been given or is given

---

6. The Rotorex Standard Terms do not in their entirety replace Kingsbury's Standard Terms. Boilerplate terms in Kingsbury's December 3 Proposal which do not expressly conflict with terms in the Rotorex Purchase Order of December 22 remain a part of the contract between the parties.

within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognized the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consists of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of Titles 1 through 10 of this article.

The Rotorex December 22 Proposal in fact stated terms additional to or different from those previously agreed upon. Those additional terms may therefore be construed as proposals for additions to the contract unless they materially altered the original contract or unless Kingsbury objected to them within a reasonable time. The Rotorex Proposal did not materially alter terms and provisions of the agreement reached on December 3. Moreover, Kingsbury did not object to most of the conflicting provisions but only to Items 2 and 12. It is therefore apparent that the December 3 contract was modified by the Rotorex December 22 order, which was accepted by Kingsbury with the exceptions noted in Austin's letter.

(c)

*Provisions of the Contract*

Neither party has properly identified the controlling terms and provisions of the contract between them. Kingsbury relies on its Standard Terms.[7] Included among the Kingsbury Standard Terms was a disclaimer of express or implied warranties not contained in the contract, including the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. It was further provided that Kingsbury would not in any event be liable for consequential damages arising out of its performance under the contract.

Kingsbury's Standard Terms also provided that the contract was to be governed by the laws of the State of New Hampshire.

Rotorex in turn relies on its Standard Terms contained in its December 22 Purchase Order, except for Items 2 and 12 to which Austin had specifically objected. The Rotorex Standard Terms included express warranties and also provided that the interpretation and legal effect of the contract was to be governed by the laws of the State of New York.

On the record here, this Court concludes that the final contract between the parties includes the following terms and conditions: (1) the terms of Kingsbury's August 18 Proposal, including Kingsbury's Standard Terms which do not conflict with Rotorex's Standard terms; (2) the modifications and additions agreed upon at the December 3, 1993 meeting; and (3) the Rotorex Standard Terms contained as a part of its December 22 Purchase Order except for Items 2 and 12. As a result, Kingsbury's consequential damages and implied warranty disclaimers remain in effect as a part of the contract, as do the provisions of the Rotorex Standard Terms pertaining to express warranties. Pursuant to Rotorex's Standard Terms, interpretation of the contract is governed by New York law.

For the reasons stated, plaintiff's motion for partial summary judgment will be granted to the extent that plaintiff has asked this Court to determine as a matter of law the terms and conditions of the contract between the parties. Plaintiff's motion will be denied to the extent that plaintiff has asked this Court to determine as a matter of law that the contract between the parties consists in its entirety of the Rotorex December 22 Purchase Order except for Items 2 and 12.

7. Both the August 18 Proposal and the December 3 Proposal contain the same "Standard Terms and Conditions of Sales."

## VI

*Defendant's Motion for Partial Summary Judgment*

(a)

*Counts Four and Five of the Complaint*

■ In Counts Four and Five of the complaint, plaintiff Rotorex seeks recoveries under tort law. Count Four asserts a claim of negligent misrepresentation, and Count Five asserts a claim of negligent design, manufacture and installation.

In seeking summary judgment as to Counts Four and Five, defendant Kingsbury contends that a recovery for economic loss alone may not be had in tort. According to Kingsbury, under the so-called "economic loss doctrine," Rotorex's remedies lie in an action of contract alone and not in one of tort. The Court would agree.

■ This and other courts have held that a party which has entered into a contract for the sale of goods may not recover in tort for purely economic losses arising out of the quality or performance of the goods. *In re Lone Star Indus. Inc., Concrete R.R. Cross Ties Litigation,* 776 F.Supp. 206, 221 (D.Md.1991); *Morris v. Osmose Wood Preserving,* 340 Md. 519, 531, 667 A.2d 624 (1995). A commercial buyer seeking damages for economic loss resulting from the purchase of defective goods may recover for breach of warranty under the Uniform Commercial Code but not for negligence. *Spring Motors Distributors, Inc. v. Ford Motor Co.,* 98 N.J. 555, 489 A.2d 660, 663 (N.J.1985). New York law is to the same effect. *See Vitolo v. Dow Corning Corp.,* 234 A.D.2d 361, 651 N.Y.S.2d 104, 105 (App.Div.1996); *McDowell v. Atco Rubber Prods.,* 221 A.D.2d 876, 634 N.Y.S.2d 554, 556 (App.Div.1995). In *Lone Star,* this Court, in ruling that the tort claims asserted in that case were barred by the economic loss doctrine, quoted with approval from a decision of the Supreme Court of Virginia in *Sensenbrenner v. Rust, Orling and Neale,* 236 Va. 419, 374 S.E.2d 55, 58 (Va.1988), as follows:

> Tort law is not designed, however, to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts.

776 F.Supp. at 222.

In this particular case, sophisticated parties in a commercial transaction entered into a contract containing detailed provisions. After lengthy negotiations, the parties allocated their risks and limited their remedies. In a case involving a commercial transaction such as the one at issue here, the remedies provided by the Uniform Commercial Code and in the contract are exclusive. *Lone Star,* 776 F.Supp. at 222; *Wood Products, Inc. v. CMI Corp.,* 651 F.Supp. 641, 648 (D.Md. 1986).

■ The economic loss doctrine bars not only plaintiff's claim of negligence but also its claim of negligent misrepresentation.[8] As this Court has held, a contractual relationship does not provide the duty of care necessary for the maintenance of a negligent misrepresentation claim. *Flow Indus. Inc. v. Fields Constr. Co.,* 683 F.Supp. 527, 530 (D.Md.1988).

For these reasons, defendant Kingsbury is entitled to summary judgment as to Counts Four and Five of the complaint.

(b)

*Count Two of the Complaint*

In Count Two of the complaint, plaintiff Rotorex seeks a recovery for breach of implied warranty. It is alleged that the

8. Kingsbury has also argued that the claim asserted by plaintiff in Count Five must fail because there is no evidence that Kingsbury made any misrepresentations. Since the economic loss doctrine bars any recovery by Rotorex under Count Five, it is not necessary for the Court to address this alternative argument.

contract included an implied warranty that the system would be free from defects in workmanship and materials and that it would be fit and suitable for its intended purposes.

In seeking summary judgment as to Count Two of the complaint, defendant Kingsbury relies on the warranty provisions contained in Kingsbury's Standard Terms. Pursuant to the provisions in question, Kingsbury expressly disclaimed implied warranties. This contractual provision is controlling, inasmuch as there are no conflicting implied warranty terms in Rotorex's Standard Terms.[9] Under § 2–316 of the Uniform Commercial Code, implied warranties may be disclaimed.

Accordingly, summary judgment in favor of defendant Kingsbury will be entered as to Count Two of the complaint.

(c)

*Counts One and Three of the Complaint*

In Count One of the complaint, plaintiff Rotorex seeks a recovery for breach of express warranty, and in Count Three plaintiff asserts a claim of breach of contract. In Count One, plaintiff alleges that defendant expressly warranted that the delivered system would be capable of producing compressor units at a specified rate and that the units produced would meet quality standards. According to Rotorex, Kingsbury breached these express warranties. Count Three repeats the allegations of Count One and also alleges that Kingsbury agreed that a satisfactory system would be installed and satisfactorily operating in April 1995 and that, in breach of the contract, the system was not delivered

until after July 1995 and is not and cannot be made to be fully operable.

As to these claims, applicable provisions of Rotorex's Standard Terms are controlling. Kingsbury accepted these terms when they were included as a part of the December 22 Purchase Order and expressly agreed to in writing in Austin's letter of January 5, 1994. Contained in that Order are certain express warranties which are controlling in spite of provisions to the contrary in Kingsbury's Standard Terms. Rotorex is entitled to assert claims of breach of express warranty and breach of contract based on these contractual provisions.

Numerous disputed questions of material fact arise under Counts One and Three of the complaint. The parties hotly dispute whether or not there were fundamental design flaws in the system and whether it was, as delivered, capable of performing as warranted. Kingsbury contends that the system is capable of producing at the rate specified but that Rotorex's delays, poor component parts and operating problems kept the system from operating at its potential.[10] Rotorex in turn contends that the delays in delivery were caused by Kingsbury, and that, in spite of Kingsbury's extensive efforts to remedy the problems which arose, the system has never performed as warranted and cannot reasonably be made to do so. Both parties have pointed to evidence in the record supporting their positions.

In particular, the parties dispute the system's capability. They also dispute each party's responsibility for the various delays which occurred[11] and for the sys-

---

9. The Rotorex Standard Terms did expressly state that the goods and services would be merchantable, free from defects in material and workmanship and fit for the uses and purposes intended. However, as counsel for Rotorex has recognized, these were *express* warranties and not *implied* warranties.

10. Kingsbury further relies on contractual provisions indicating that representations that the system would be capable of producing 480 compressors per hour were mere esti-

mates and not express warranties. In view of conflicting evidence of record, this issue cannot be decided as a matter of law.

11. In his letter of April 6, 1995, Giordano stated that the April 3, 1995 delivery date was a requirement that he had personally imposed to insure that delivery of the system would be coordinated with Rotorex's manufacturing schedule. According to Kingsbury, his improper threat to cancel the order led to compromises in the design and development of

tem's substandard performance. Because of the existence of disputed issues of material fact, defendant is not entitled to summary judgment as to Counts One and Three of the complaint.

█ Kingsbury has also argued that Rotorex's acceptance of the system after the runoff at Keene effectively bars its breach of warranty and breach of contract claims. The Court would disagree. A factual dispute arises as to whether it was the intention of the parties that final acceptance would occur at the first runoff at Keene or after shipment, reassembly and debugging of the system at Walkersville. Rotorex contends that it never finally accepted the system because the final 5% of the purchase price was never paid. Since evidence exists in the record here to support the positions taken by each side, the issue in question cannot be decided as a matter of law.

Kingsbury has also argued that Rotorex prevented it from fulfilling the contract and that Rotorex therefore cannot recover damages for Kingsbury's alleged non-performance. This contention also involves disputed issues of material fact. As the record indicates, each party was responsible for some of the delays which occurred. Whether Rotorex effectively prevented Kingsbury from performing under the contract is a question which, on the record here, must be decided by the jury.

For these reasons, defendant Kingsbury is not entitled to summary judgment as to Counts One and Three of the complaint.

(d)

*Damages*

Relying on its Standard Terms, Kingsbury argues that applicable provisions of the contract limit the amount of the damages which plaintiff Rotorex would be entitled to recover in this case. The Court would agree.

the system in order that the runoff at Keene could be held in late May of 1995.

█ Kingsbury's Standard Terms provide, *inter alia*, that Kingsbury cannot be liable for consequential damages and that liability for late delivery, namely after August 31, 1995, cannot exceed 2% of the total price of the system. Those provisions are enforceable and are not contradicted in any way by Rotorex's Standard Terms. Since Rotorex is a sophisticated business entity which sought and received clarification of the terms in question before accepting the contract, it cannot claim that Kingsbury's consequential damage limitation was unconscionable. *See Uniform Commercial Code,* § 2–719, comment 1. New York law has recognized the validity of contractual limitations on consequential damages in a suit seeking a recovery for a commercial loss. *See Suzy Phillips Originals, Inc. v. Coville,* 939 F.Supp. 1012, 1018 (E.D.N.Y.1996) (citing New York cases and § 2–719).

For these reasons, the Court concludes as a matter of law that the contractual provisions in question limit the amount of damages which Rotorex would be entitled to recover if it prevails at trial either under Count One or Count Three of the complaint.[12]

(e)

*Count I of the Counterclaim*

█ In Count I of its counterclaim, Kingsbury contends that it is entitled as a matter of law to a judgment awarding it the additional amounts due and owing under the contract. As disclosed by the record, 5% of the purchase price has been retained by Rotorex. Kingsbury argues that since Rotorex accepted the system and has retained it, its obligation to pay the contract price in full arises even though it may claim that the goods which it accepted are defective.

**12.** Contrary to Kingsbury's argument, the cap on damages for late delivery cannot reasonably be construed to limit the recovery of all damages to 2% of the purchase price.

On the record here, this Court concludes that defendant Kingsbury is not entitled to summary judgment in its favor as to Count I of its counterclaim. Genuine issues of material fact exist. Generally, a buyer must pay the full purchase price of the goods even when the goods are allegedly defective. *See* UCC § 2–607(1); *Orbis Co. v. Rivera,* 140 A.D.2d 679, 529 N.Y.S.2d 104, 105 (App.Div.1988). Nevertheless, New York law recognizes a "recoupment defense" based on § 2–717 of the Uniform Commercial Code, *i.e.,* "a buyer may defeat or diminish a seller's substantive action for goods sold and delivered by interposing a valid counterclaim for breach of the underlying sales agreement." *Created Gemstones, Inc. v. Union Carbide Corp.,* 47 N.Y.2d 250, 256, 417 N.Y.S.2d 905, 391 N.E.2d 987 (N.Y.1979); *Frank L. Savage, Inc. v. Paine,* 149 A.D.2d 372, 540 N.Y.S.2d 239, 239 (App. Div.1989). In this case, Rotorex has "interposed" a claim against Kingsbury for breach of the underlying sales agreement. The validity of that interposed claim depends on the resolution of the underlying contract dispute. As discussed herein, disputed questions of material fact exist as to the breach of contract issue in this case. Consequently, proper disposition of Count I of the counterclaim must await resolution of this factual question. *Paine,* 540 N.Y.S.2d at 239.

For these reasons, Kingsbury's motion seeking summary judgment as to Count I of its counterclaim must be denied.

### VII

#### *Conclusion*

For all the reasons stated, this Court has concluded that both plaintiff's motion for partial summary judgment and defendant's motion for partial summary judgment must be granted in part and denied in part. An appropriate Order will be entered by the Court.